Johnston, Ch.
It is the opinion of the Court, that the first ground of appeal cannot be sustained. I think the Chancellor might have gone further than he did. The true construction of so much of the 8th clause of the will, as relates to the question presented by this ground is, I think, that the testator intended to give Thomas Rainsford no beneficiary interest in the property bequeathed to Esther and Mary Rainsford, but simply the custody and control of it during their minority, for the purpose of educating and maintaining them.
The third ground is also untenable. Without giving an opinion on the principle advanced by the Chancellor, that he who labors for another on a mere expectation that provision will be voluntarily made for his reward, is not entitled to raise an account for his services; and without resorting to the rule laid down by him, that a *70 child who, after attaining majority, remains under the protection and government of his parent is, as to his rights and duties, as if he was still a minor, a rule, perhaps not of unusual application: it is enough to say, that this defendant, as appears by his answer, did not, until his father’s death, consider his services as raising a pecuniary obligation against the father, but as entitling him to a joint interest and ownership in the property accumulated. But this right is inconsistent with the will under which he claims. Having taken under the will, he cannot take against it. Besides, viewing his claim as a debt, it is sufficiently certain that it is more than paid by his legacies.
The Court is also of opinion that the second ground of appeal must be overruled.
I do not, myself, think that there was any official obligation on the executors and trustees appointed in the will, to give notice of the legacies; nor that there was any obligation on Thomas Rains-ford, on the score of the property being limited over to him, to extend notice to those interested, to defeat him; nor do I think the union in himself of trust and private interest, in consequence of his administering with the will annexed, subjected him to any such legal duty.
His duty, under the will, was to give it that publicity directed by the laws, by producing it to the Ordinary, where by law it was to be deposited and recorded for the information of all concerned. It is incumbent on those interested under wills, to take notice of all that appears upon the face of them, when thus produced: as is apparent from those cases in which it has been held that legatees must take notice of the conditions annexed to their legacies. Their being obliged to take notice of the conditions, is only a consequence of their obligation to attend to the bequests themselves, to which the conditions are annexed. This principle of course cannot apply to secret trusts, or conditions not ajipearing in the will. As to these, there may be an obligation on the executor to disclose them.
In expressing these opinions, I have no authority to commit my brethren for or against them; nor is it necessary to determine any thing on this point.
*71 The Court is unanimously of opinion that an executor is not only bound to produce the will in the proper tribunal, but that he is guilty of a fraudulent violation of trust, if he wilfully does any thing to obstruct intelligence of its contents from reaching the legatees; or with a fraudulent intent refuses to answer any fair and reasonable inquiries, where his answer would naturally lead the legatees to a knowledge of their rights. The least concealment with a view to defeat the trusts, is a violation of trust. Now, when Thomas Rainsford received his brother’s letter, inquiring about his father, he must have been aware that his giving a true answer,.that he was dead, would lead his brother to inquire whether he left a will, and what were its provisions, (since if no will was left he would have been entitled to a distributive share of the personalty;) and that the discovery of the provisions of the will, by his brother, would naturally reach his sons through him. To return no answer, therefore, to his brother, was obstructing an ordinary channel of intelligence, to the prejudice of his cestui qua trust. The evidence leaves no doubt that he saw this fully; and that his intention was to conceal, with a view to defraud his nephews for his own benefit.
It is ordered that the motion be dismissed.